UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

CASE NO.   3:26-cr-72-JEP-SJH
18 U.S.C. § 371

HAI VINH LAM
    a/k/a "Tony Lam"
XING TIAN

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
### (Conspiracy to Commit Marriage Fraud)

### A.   Introduction

At times relevant to this Indictment:

1.      The Immigration and Nationality Act ("INA") governed the immigration laws of the United States.

2.      Pursuant to the INA, non-citizens of the United States ("aliens") generally were not permitted to permanently reside in the United States unless they were lawful permanent residents ("LPRs").

3.      A United States citizen seeking to assist a relative who was an alien in obtaining LPR status in the United States was required to file United States Citizenship and Immigration Services ("USCIS") Form I-130, Petition for Alien Relative.

4.    An alien seeking to obtain LPR status in the United States was required to file USCIS Form I-485, Application to Register Permanent Residence or Adjust Status.

5.    When a United States citizen filed a Form I-130 petition for an alien spouse, a visa could be immediately available to the alien spouse upon the approval of Form I-130, because the spouse was an immediate relative.

6.    Immediate relatives had special immigration priority and did not have to wait in line for a visa number to become available for them to immigrate because there were an unlimited number of visas for spouses of United States citizens.

7.    An immediate relative relationship generally allowed the alien spouses to apply on Form I-485, Application to Register Permanent Residence or Adjust Status, to become an LPR either at the same time or subsequent to their United States citizen spouse filing Form I-130, Petition for Alien Relative.

8.    Once USCIS approved an alien for LPR status, the agency issued the alien an LPR card (Form I-551 or "green card").   The LPR card authorized the alien to lawfully reside and work in the United States.

## B.   The Conspiracy

9.    From an unknown date not later than in or about February 2026, and continuing through in or about April 2026, in the Middle District of Florida, and elsewhere, the defendants,

HAI VINH LAM, a/k/a "Tony Lam,"
and
XING TIAN,

2

did knowingly and willfully conspire, combine, confederate, and agree with other persons known and unknown to the grand jury, including individuals referred to herein as Conspirator-1 and Conspirator-2, to commit an offense against the United States, specifically engaging in marriage fraud in violation of 8 U.S.C. § 1325(c).

## C.  **The Manner and Means**

10.    The manner and means by which the defendants and their co-conspirators carried out the conspiracy in the Middle District of Florida and elsewhere included, among other things:

a.    It was part of the conspiracy that the conspirators attempted to recruit, and did recruit, U.S. citizens to join the conspiracy and marry conspirator aliens, specifically, Chinese nationals, for the purpose of evading immigration laws and illicitly obtaining beneficial immigration status for the Chinese nationals.

b.    It was further part of the conspiracy that the conspirators preferred to recruit U.S. citizens who were members of the U.S. armed forces to join the conspiracy and marry Chinese nationals.

c.    It was further part of the conspiracy that the conspirators would offer to pay, and did pay, U.S. citizens to marry Chinese nationals.

d.    It was further part of the conspiracy that the conspirators would offer to pay, and did pay, the travel expenses of U.S. citizens who traveled to marry Chinese nationals.

e.    It was further part of the conspiracy that the resulting marriages between U.S. citizens and Chinese nationals were a sham and not true marriages.

3

f.    It was further part of the conspiracy that the conspirators would photograph the couples who were a party to these sham marriages, including during the marriage ceremonies, in an effort to create evidence that could be presented to immigration authorities to suggest that the marriages were legitimate, and the couples were in loving, committed relationships.

g.    It was further part of the conspiracy that the conspirators would rely on the sham marriages as a basis for petitioning immigration authorities (by filing Forms I-130, I-485, or both) for the Chinese nationals to become lawful U.S. residents and obtain LPR cards or green cards.

h.    It was further part of the conspiracy that the conspirators sometimes used encrypted applications to communicate with each other regarding the conspiracy.

i.    It was a further part of the conspiracy that the conspirators would perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purposes of the conspiracy and the acts committed in furtherance thereof.

### D.    Overt Acts

11.    In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Middle District of Florida, and elsewhere:

a.    On or about February 2, 2026, LAM recruited an undercover law enforcement officer posing as a U.S. Army servicemember ("UC-1") to enter into a

4

sham marriage with a Chinese national, offering during a phone call to pay UC-1 approximately $35,000 in three installments for the marriage, green card, and divorce process.

b.    On or about February 5, 2026, LAM advised UC-1 during a phone call that he had identified a Chinese national who would be her sham marriage spouse, and subsequently sent UC-1 a photograph of TIAN.

c.    On or about March 27, 2026, LAM made an appointment for April 10, 2026, with the clerk's office in Clay County, in the Middle District of Florida, for the purpose of obtaining a marriage license for TIAN and UC-1.

d.    On or about April 9, 2026, LAM and TIAN flew from New York to Jacksonville, in the Middle District of Florida, for the purpose of finalizing the sham marriage between TIAN and UC-1.

e.    On or about April 10, 2026, LAM and TIAN met UC-1 and another undercover law enforcement officer posing as a photographer ("UC-2") at a coffee shop in Clay County, during which meeting LAM recruited UC-2 to engage in a sham marriage with a Chinese national.

f.    On or about April 10, 2026, LAM called co-conspirators in New York, including Conspirator-1 and Conspirator-2, to identify a sham marriage spouse for UC-2, after which he advised UC-2 that his "office" had identified someone.

g.    On or about April 10, 2026, TIAN went into the Clay County clerk's office and obtained a marriage license with UC-1.

5

h.      On or about April 10, 2026, TIAN participated in a sham marriage ceremony with UC-1.

i.      During and after the sham marriage ceremony on April 10, 2026, at LAM's direction, UC-2 took pictures of TIAN and UC-1 to substantiate the legitimacy of the marriage for immigration application purposes.

j.      After the sham marriage ceremony on April 10, 2026, LAM paid UC-2 $500 cash for photographing the wedding.

k.      On or about April 10, 2026, LAM, TIAN, and UC-1 went to a bank branch where they opened up a joint bank account for TIAN and UC-1 for immigration application purposes, and TIAN withdrew $15,000 in cash.

l.      On or about April 10, 2026, LAM provided UC-1 with the $15,000 cash withdrawn by TIAN as her initial payment for engaging in the sham marriage.

All in violation of 18 U.S.C. § 371.

A TRUE BILL,

_____
Foreperson

GREGORY W. KEHOE
United States Attorney

By: _____
DAVID B. MESROBIAN
Assistant United States Attorney

By: _____
MICHAEL J. COOLICAN
Assistant United States Attorney
Chief, Jacksonville Division

7

FORM OBD-34
4/22/26 Revised

No.

# UNITED STATES DISTRICT COURT
## Middle District of Florida
## Jacksonville Division

### THE UNITED STATES OF AMERICA

vs.

### HAI VINH LAM and
### XING TIAN

### INDICTMENT

Violations: 18 U.S.C. § 371

A true billl

Foreperson

Filed in open court this 22nd day

of April, 2026.

_____
Clerk

Bail   $_____

GPO 863 525